Bundy and another, Appellants, vs. McLean, Respondent.

*September 26 — October 20, 1899.*

*Appeal: Findings: Partnership: Accounting.*

1. In an action between attorneys for an accounting and settlement of partnership transactions involving services rendered for a single client, a finding of the trial court that the partnership agreement was a conditional one and that the services in question were rendered by the defendant before conditions precedent to the completion of the partnership agreement had been performed, are *held* to be against the clear preponderance of the evidence.

2. Where the plaintiffs in such case were ready at all times to render legal services under the partnership agreement, the fact that little work was done by them gave the defendant no right to more than his agreed share of the earnings.

3. One of the plaintiffs and the defendant entered into a partnership agreement with the understanding that the other plaintiff should be a party thereto after a certain date. After the business of the partnership was fully consummated the defendant refused to account for money received in conducting it. *Held,* that an action for an accounting was the proper remedy by which to enforce plaintiffs' rights.

Bundy and another vs. McLean.

APPEAL from a judgment of the circuit court for Dunn county: JAMES O'NEILL, Judge. *Reversed.*

Action for an accounting and settlement of partnership transactions. The complaint states that plaintiff *R. E. Bundy* and defendant formed a partnership to perform legal services for Mrs. B. Kimball in a pending divorce action and other business growing out of her controversies with her husband, the fees received for such services to be equally divided; that thereafter plaintiffs formed a partnership whereby *E. B. Bundy* acquired a one-half interest in *R. E. Bundy's* share of the profits of such business, with the consent of defendant; that thereafter plaintiffs fully performed the partnership agreement with defendant; that a considerable sum of money was earned in such business, one half of which, less the expenses, belongs to plaintiffs; that plaintiffs are unable to state the amount of such earnings, and that defendant has received the whole thereof and refused to account therefor or for any part of the same, or to pay any part thereof to plaintiffs. All of the material allegations of the complaint were put in issue by the answer.

The cause was tried by the court and resulted in findings of fact in substance as follows: In October, 1896, certain litigation was pending between Mrs. Kimball and her husband, in which Mr. J. F. Ellis was her attorney, with Mr. W. H. Frawley as counsel, the latter being assisted voluntarily by plaintiff *R. E. Bundy.* In that situation, about November 1, 1896, plaintiffs and defendant agreed to jointly serve Mrs. Kimball in the litigation mentioned, upon *R. E. Bundy* being substituted for Mr. Frawley and defendant being substituted for Mr. Ellis, and upon *E. B. Bundy's* retirement from the office of circuit judge, which was to take place on the first Monday of the succeeding January. Prior to the performance of either of the conditions precedent to the completion of the partnership agreement, Mr. W. P. Bartlett effected a settlement between the parties to the

litigation, Mr. and Mrs. Kimball, independent of their attorneys in such litigation. In December, 1896, after such settlement, defendant, in a new action commenced by him, obtained a divorce for Mrs. Kimball, for which he received $100, and out of which he paid $16.20 for expenses. Defendant also received $135 for his services rendered to Mrs. Kimball before the conditional agreement between him and the plaintiffs. No partnership agreement was completed between plaintiffs and defendant, nor was any contemplated except upon condition of *E. B. Bundy's* retirement from office, and Mrs. Kimball's attorney, Ellis, and counsel, Frawley, being discharged, and the defendant and *R. E. Bundy* being substituted in their places.

On such findings judgment was rendered for the defendant for costs.

*J. R. Mathews*, for the appellants.
*Charles E. Freeman*, for the respondent.

MARSHALL, J. The main question is, Are the findings that no complete partnership agreement was made between plaintiffs or either of them and defendant, against the clear preponderance of the evidence? There is no controversy but that, before the date of the alleged partnership agreement, defendant had, for a period of about one year, advised Mrs. Kimball and assisted her professionally in various ways in her controversy with her husband, particularly in a divorce action in which J. F. Ellis was her attorney of record and W. H. Frawley her counsel, and that *R. E. Bundy* was a partner, in name, of Frawley and as such performed professional services in the action. That was the situation in the fall of 1896, when, all parties agree, there was talk between plaintiffs and defendant about uniting in serving Mrs. Kimball. Plaintiffs claim that a complete partnership agreement was made, and so testified, while defendant testified that there was only a conditional agreement. The trial court believed the defendant and found accordingly.

The testimony upon which the findings on the subject rest is in substance as follows: *E. B. Bundy* testified that defendant proposed to him that he and his son *Robert* should join with the defendant in rendering professional services to Mrs. Kimball, taking for their services two thirds of the earnings; that he consented to enter into such an agreement after the first Monday of January, 1897, the earnings to be equally divided, *Robert*, in the meantime, to be employed; that defendant consented to that arrangement and asked him to report it to *Robert*, which was done; that the next time he heard of the matter was on the occasion of a visit by defendant to plaintiffs' office in January, 1897, at which time the defendant informed them that the divorce action had been settled, and suggested that they take $50 as their part of the fees; that Robert replied that if $50 was one half of the fees on an equal division of earnings, less expenses, according to the agreement, it was satisfactory, and that defendant did not reply; that the witness formed a partnership with his son *Robert* prior to such conversation, by the terms of which they became entitled, as partners, to whatever was due from defendant under the partnership agreement with him.

*Robert E. Bundy* testified that his father reported defendant's proposition as to their conducting Mrs. Kimball's legal business; that soon after that he conversed and agreed with defendant that they should act together in such business for an equal division of the earnings, if Mr. Frawley would consent and Mrs. Kimball would personally request him to serve as her attorney, at which time defendant agreed to induce Mrs. Kimball to make such request; that the witness thereafter obtained Mr. Frawley's consent and received from Mrs. Kimball a letter which reads as follows: "I heard that you are going away from Eau Claire to practice law with the judge, your father, and I want you to keep charge of my suit with Mr. Kimball and not Mr. Frawley, if you dissolve. . . . I will see you when I come to Menom-

onie;" that subsequent to the reception of such letter he received another letter from Mrs. Kimball stating that on account of sickness she had delayed her trip to Menomonie, but would come the next Monday if able to travel; that subsequent to the writing of the last letter Mrs. Kimball visited Menomonie, called on the witness, and they together visited the defendant and talked over the pending case, at which time it was agreed that the witness should write to the judge who had the cause under advisement in regard to a legal question, urging the making of an early decision. The witness also corroborated his father as to the conversation with defendant after the settlement, and said that at a subsequent conversation the defendant refused to account to the plaintiffs for any part of what was received from Mrs. Kimball.

Mrs. Kimball testified that she wrote the first letter to *Mr. Bundy* at the defendant's request; that he furnished the draft for the letter, which she copied; that he requested her to return the draft; that she called on *Robert* in accordance with the suggestions in her letters, and that they together visited the defendant, where the two attorneys, she supposed, talked the case over some; that she supposed she retained *Mr. Bundy;* that she intrusted the matter of his employment to the defendant; that she made some agreement with *R. E. Bundy* outside of the letters, but not as to what he was to do or receive, that being left to the defendant; that defendant made some suggestion to her about the *Bundys* having $50; that she settled with the defendant for all the legal services rendered for her.

Mr. Ellis said that defendant suggested to him that *Mr. Bundy* would expect something. Frawley corroborated *Robert Bundy* as to consenting that the latter might take up the Kimball litigation, stating that he, Frawley, must have his fees for services rendered.

Defendant said that he had but one conversation with the

*Bundys* in regard to their acting with him as Mrs. Kimball's attorneys; that such conversation was at his office in November, 1896, and resulted in an agreement that an arrangement should be made when the elder *Bundy* retired from office on the first Monday of the next January, and defendant should be substituted as attorney in place of Mr. Ellis and *Robert Bundy* in place of Mr. Frawley; that before the happening of such events the whole matter between Mrs. Kimball and her husband was settled up; that after such settlement he visited the *Bundys* at their office and informed them of it, and suggested that he would obtain $50 for *Robert* if he would induce Mr. Frawley to cut down his claim for attorney's fees; that *Robert* suggested that plaintiffs were entitled to one half of what had been earned by defendant in Mrs. Kimball's affairs, and that he replied thereto, " I do not see why; " that $135 was paid to defendant by Mrs. Kimball for services rendered before the conditional agreement, and $100, less $16.20 for expenses, earned in obtaining the divorce afterwards; that the new action was instituted pursuant to the agreement of settlement between the Kimballs; that the money was paid by Mr. Kimball; that defendant did not agree to induce Mrs. Kimball to request *Robert Bundy* to serve as her attorney, and did not have any talk with *Robert* about Mrs. Kimball's case; that *Robert* came to the office with Mrs. Kimball and immediately went away, nothing about the business being said.

Both of the *Bundys* denied being in defendant's office together, and *Robert* denied that defendant made any suggestion about obtaining $50 for him as consideration for inducing Mr. Frawley to cut down his bill.

The foregoing presents in brief all the material portions of the testimony and all that need be considered. It will be seen that defendant's testimony, upon which the court's findings are based, is not corroborated by any fact or circumstance, while it is contradicted by the testimony of both

of the *Bundys*. *Robert Bundy* is corroborated by the fol-
lowing facts and circumstances: He obtained the consent of
Mr. Frawley to take up the Kimball litigation; he was re-
quested by Mrs. Kimball to act as her attorney; such request
was made pursuant to a letter of instructions written by the
defendant to Mrs. Kimball; Mrs. Kimball visited his office
and they together called upon the defendant to consult about
the divorce case; and after the settlement defendant, on
several occasions, recognized that compensation from Mrs.
Kimball was due to the *Bundys*, or one of them. The de-
fendant testified that his suggestion to Mrs. Kimball by
letter to write to *Robert Bundy* was made before the talk
between him and the *Bundys*, but the probabilities all point
the other way. It is not reasonable to suppose that defend-
ant requested Mrs. Kimball to retain *Mr. Robert Bundy*,
and talked with him and with his father about a community
of interest in such services, after writing to Mrs. Kimball
on the subject, without mentioning that fact. True, defend-
ant explains the circumstance of the talk about $50 by say-
ing that it was to be for services of *Robert* in obtaining a
reduction of Mr. Frawley's bill, but the evidence of talk with
Mr. Ellis and with Mrs. Kimball on the same subject cor-
roborates plaintiffs' view and impairs the credit of the de-
fendant. Nowhere does the defendant appear to be corrobo-
rated, but on the contrary he appears to be contradicted by
all the evidence and the circumstances in the case, as before
indicated. He denied that *Robert Bundy* talked with him
about the case, but the fact that Mrs. Kimball visited *Robert
Bundy's* office by appointment in relation to his acting as
one of her attorneys, and that they together called upon the
defendant, where, according to Mrs. Kimball's testimony,
rightly understood, as well as *Robert Bundy's*, the pending
case was the subject of conversation, strongly corroborates
the latter. There was no reason for Mrs. Kimball's call
upon *Robert Bundy*, in accordance with her written request

for him to act as one of her attorneys, and the two visiting the defendant, unless the request was considered as accepted and the relation of attorney and client existed, and that *Mr. Bundy* and defendant were to act together. The only circumstance that could, in any view of the case, be taken as corroborating defendant's testimony, is the fact that, without substitution, defendant and plaintiffs could not control the pending litigation; but that is of little weight in view of the fact that defendant, though not in the case of record, had acted as Mrs. Kimball's adviser for a year, largely directed all operations, finally caused the litigation to be brought to a close independent of the attorneys of record, and obtained, as a part of the settlement, the sum of $100 to commence and prosecute to a conclusion a new suit for a divorce.

On the whole the evidence preponderates clearly against the findings of the trial court. So clearly, in fact, as to leave very little room for reasonable controversy as to where the truth lies. There seems to be no reason why the testimony of the defendant should be said to outweigh the mass of evidence, direct and circumstantial, against it. The fact that very little work was done by plaintiffs, or either of them, under the partnership agreement with defendant, is of little importance. The agreement having been made, so long as *Robert Bundy* was ready and willing to render legal services whenever called upon, the fact that defendant did substantially all the work gave him no claim to more than one half of the earnings, less the expenses. It is quite clear that defendant was anxious to secure the services and influence of plaintiffs, particularly of *Judge Bundy*, for his client and friend, Mrs. Kimball. His wishes in that regard were gratified, his client had the full benefit of that situation, probably, and it quite likely was a strong factor in bringing about the settlement. Further discussion is unnecessary. The great preponderance of the evidence is, clearly, that a

partnership agreement was made, substantially as claimed by plaintiffs, and that they are entitled to one half of the net earnings in the business which the parties agreed to conduct.

Some question is raised as to the right of plaintiffs to maintain this action, but no difficulty in that direction is perceived. The partnership agreement between *R. E. Bundy* and defendant was entered into with the understanding that *E. B. Bundy*, after the first Monday in January, 1897, should be a party thereto. The business of the partnership was fully consummated before the action was commenced. Defendant refused to account for the money received in conducting the partnership business, so an equitable action for an accounting and settlement of the partnership affairs was the proper and only course for the plaintiffs to pursue. No question of law seems to be involved requiring consideration. The trial court found that $100 was earned and received by the defendant for services rendered after the talk with *Robert Bundy*, and that the rest of the payments to defendant were for services rendered by him before such talk. The $100, according to such findings, constitutes the partnership fund. That, less the expenses, leaves $83.80, $41.90 of which is the property of plaintiffs. The trial court should have found the existence of the partnership as claimed, and that the earnings consist of $100, and the net earnings $83.80; that all of such earnings were in possession of the defendant; and that he was liable to pay to the plaintiffs for their share thereof, $41.90.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment in favor of the plaintiffs in accordance with this opinion and for costs to be taxed.